## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

JAIDEN WILLIAMS,                           :
                                           :
      Plaintiff,                      :
                                           :
v.                                         :          CASE NO.: 5:24-CV-323 (LAG)
                                           :
BOARD OF REGENTS OF                        :
THE UNIVERSITY SYSTEM OF                   :
GEORGIA, *et al.*,                         :
                                           :
      Defendants.                     :
_____        :

## <u>ORDER</u>

Before the Court is a Motion to Dismiss and Brief in Support (Motion to Dismiss) filed by Defendants Board of Regents of the University System of Georgia, Fort Valley State University, Paul Jones, Olufunke Fontenot, Timothy Hatchett, Kimberly Ballard-Washington, Keren Vinson, and Michelle Clarington. (Doc. 13). For the reasons below, the Complaint (Doc. 1) is **DISMISSED without prejudice** as a shotgun pleading, and the Court orders repleader. Defendants' Motion to Dismiss (Doc. 13) is **DENIED as moot**.

## FACTUAL BACKGROUND

This suit arises from a complaint of sexual harassment brought by Plaintiff Jaiden Williams against Defendant Donald McCarthy. Plaintiff filed this suit against the Board of Regents of the University System of Georgia (Board of Regents); Fort Valley State University (FVSU); Paul Jones (Jones), individually and in his official capacity as President of FVSU; Olufunke Fontenot (Fontenot), individually and in his official capacity as Provost and Vice President of Academic Affairs; Timothy Hatchett (Hatchett), individually and in his official capacity as Vice President of Student Affairs; Kimberly Ballard-Washington (Ballard-Washington), individually and in her capacity as Compliance Specialist; Donald McCarthy (McCarthy); Keren Vinson (Vinson), individually and in her official capacity as Title IX Coordinator and Compliance Specialist; and Michelle

Clarington (Clarington), in her individual and official capacity as Title IX Investigator and Compliance Coordinator. (Doc. 1). During the relevant time, Plaintiff was enrolled as a student at Fort Valley State University, a state funded institution, and worked for Defendant FVSU as a security guard. (*Id.* ¶¶ 2, 11–12). On December 5, 2022, while Plaintiff was working as a security guard, she received a text message from Defendant McCarthy—an FVSU employee—stating that he would be in his office working late and asking Plaintiff to stop by. (*Id.* ¶¶ 12–13). Plaintiff was familiar with Defendant McCarthy in his role as an FVSU employee.[1] (*Id.* ¶ 12). Plaintiff went to Defendant McCarthy's office, where they initially engaged in "casual conversation." (*Id.* ¶ 14). As Plaintiff was leaving, Defendant McCarthy "asked for a hug[.]" (*Id.*). While hugging, Plaintiff "became uncomfortable when [Defendant] McCarthy began rubbing her lower back." (*Id.*). Plaintiff was "afraid to say anything[,]" and instead "attempted to move away from Defendant McCarthy by sitting down in the chair." (*Id.* ¶ 15). When Plaintiff sat down in the chair, Defendant McCarthy "sat in her lap" and "began touching [her] breast[.]" (*Id.* ¶ 16). Plaintiff became more afraid and wanted to leave the office without alarming Defendant McCarthy. (*Id.* ¶ 17). Plaintiff "used her radio to contact her dispatch [to] inform her that she was in the Troup building," and "sent a text to her coworker, Officer Johnson[.]" (*Id.*). Upon receiving the text from Plaintiff, Officer Johnson called her. (*Id.* ¶ 18). Plaintiff answered the phone and used the conversation "as a way to get out of the office[.]" (*Id.*). Immediately upon meeting up with Officer Johnson, Plaintiff "recounted her interaction with Defendant McCarthy[.]" (*Id.* ¶ 19). Defendant McCarthy called Plaintiff multiple times after she left his office, including while Plaintiff was speaking with Officer Johnson. (*Id.* ¶ 20). Officer Johnson encouraged Plaintiff to report the incident to campus law enforcement, which Plaintiff did on December 7, 2022. (*Id.* ¶ 21).

On or about February 7, 2023, Plaintiff and Defendant McCarthy were placed under a "mutual no contact order[,]" and Plaintiff was required to continue working the same patrol route "without consideration of the assault." (*Id.* ¶¶ 22, 26). Furthermore, despite the

---

[1]         The Complaint is silent as to Defendant McCarthy's position at FVSU. (*See generally* Doc. 1).

no contact order, Defendant McCarthy contacted Plaintiff "in an intimidating and threatening manner" less than thirty days from the issuance of the order. (*Id.* ¶ 22). Plaintiff further alleges that Defendant McCarthy was not reprimanded for the "ongoing harassment and intimidation." (*Id.*). For over a year after the no contact order was entered, Plaintiff claims that Defendant McCarthy "made several attempts to contact or engage Plaintiff[,]" including speaking "harsh words to Plaintiff when he saw her on campus or making disparaging remarks about Plaintiff." (*Id.* ¶ 23). Plaintiff does not allege whether she reported this ongoing harassment. (*See generally* Doc. 1). According to Plaintiff, as a result of the incident, she no longer felt safe continuing her patrol duties and missed several days from work. (*Id.* ¶ 25). Plaintiff also struggled studying for final exams and ended up failing her Chemistry exam. (*Id.*).

Plaintiff filed a Title IX complaint against Defendant McCarthy with Defendant FVSU's Title IX Office. (*Id.* ¶ 32). She is not sure if she filed the complaint with Defendant Vinson or Defendant Clarington. (*Id.*). On or about March 23, 2023, the Title IX Office issued a final investigation report. (*Id.* ¶ 27). Plaintiff claims that the report included "victim shaming" evidence that reflected the acceptance of discriminatory and hostile sexual environments at Defendant FVSU. (*Id.* ¶ 28). For example, the report included the testimony of Michelle Appling, an employee in the office of Academic Affairs, who stated that "[o]n some occasions, [Plaintiff] would dress inappropriately[,] sometimes wearing a cami like tank top with no undergarment or bodycon style dress." (*Id.* ¶ 29). The report ultimately concluded that Plaintiff's claim was supported by a preponderance of the evidence and the matter went to a hearing. (*Id.* ¶ 31). Plaintiff alleges that Appling was allowed to offer testimony at the hearing as well. (*Id.*).

Plaintiff asserts that Defendant FVSU employees "lack proper training and education on Title IX issues and overall discriminator[y] behavior[.]" (*Id.* ¶ 30). Plaintiff also asserts that "[o]ne and/or all Defendants, working individually or in concert, failed to follow the requirements of Title IX in that they failed to thoroughly investigate, failed to interview all witnesses, . . . sought to discredit Plaintiff's witnesses[,]" and "ignored Plaintiff's ongoing complaints when Defendant McCarthy continued to contact and

threaten Plaintiff." (*Id.* ¶ 33). Plaintiff claims she suffered "extreme emotional distress" related to the "lackluster investigation and response from Defendants." (*Id.* ¶ 34).

## PROCEDURAL BACKGROUND

On September 17, 2024, Plaintiff filed this suit bringing claims for (1) Violation of Title IX pursuant to 20 U.S.C. § 1681(a) against all Defendants (Count I); (2) Breach of Contract against Defendant FVSU (Count II); (3) Negligence against Defendants Jones, Fontenot, Hatchett, and Ballard-Washington (Count III); (4) Negligent Hiring, Training, Retention, and Supervision against Defendants FVSU and Board of Regents (Count IV); (5) Conspiracy against all Defendants (Count V); (6) Intentional Infliction of Emotional Distress, Sexual Harassment, Sexual Assault, Sexual Abuse, Harassment, and Abuse of Authority against Defendant McCarthy (Count VI). (*Id.* ¶¶ 37–73). Plaintiff seeks compensatory damages, punitive damages, and attorney's fees and expenses of litigation. (*Id.* ¶¶ 74–86). On December 13, 2024, Defendants Board of Regents, FVSU, Jones, Fontenot, Hatchett, Ballard-Washington, Vinson, and Clarington filed a Motion to Dismiss. (Doc. 13). After requesting and receiving an extension, Plaintiff filed a Response on January 17, 2025. (Docs. 14, 15; *see* Docket). Defendants filed a Reply on January 31, 2025. (Doc. 16). The Motion to Dismiss is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## DISCUSSION

Plaintiff's Complaint is an impermissible shotgun pleading, and trial courts are directed to "step in and require a repleader" when reviewing such complaints. *Starship Enters. of Atlanta, Inc. v. Coweta County*, 708 F.3d 1243, 1250 n.7 (11th Cir. 2013); *see also Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (stating that "a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading" (citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357–58 (11th Cir. 2018)). Federal Rules of Civil Procedure 8 and 10 set forth the requirements for complaints filed in federal court. At a minimum, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief" set forth in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2), 10(b).

A complaint that does not adhere to the basic requirements of Rules 8 and 10 is a "shotgun pleading." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)). The Eleventh Circuit has "little tolerance" for shotgun pleadings, which "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

A complaint is a shotgun pleading if it: (1) contains "multiple counts where each count adopts the allegations of all preceding counts"; (2) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) fails to "separate 'each cause of action or claim for relief' into a different count"; or (4) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1324–25 (alteration in original) (quoting *Weiland*, 792 F.3d at 1321–23). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323 (first citing *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) (per curiam); and then citing *Boatman v. Town of Oakland*, 76 F.3d 341, 343 n.6 (11th Cir. 1996)). When a litigant represented by counsel "files a shotgun pleading," the "district court must sua sponte give h[er] one chance to replead before dismissing h[er] case with prejudice on non-merits shotgun pleading grounds." *Barmapov*, 986 F.3d at 1326 (citing *Vibe Micro*, 878 F.3d at 1296).

The Complaint fails in several ways. For example, Count I asserts a claim against all defendants without specifying which of the nine defendants are responsible for which acts or omissions. (Doc. 1 ¶¶ 37–46). For example, Plaintiff alleges that she was "subjected to discrimination because of the Defendants' deliberate indifference to known acts of harassment, sexual violence, discrimination, and retaliation," but Plaintiff fails to identify how each named Defendant was deliberately indifferent. (*Id.* ¶¶ 40–41). This is the very

definition of a shotgun pleading. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."). Absent specific factual allegations supporting her claim, Plaintiff has not stated a claim upon which relief can be granted; and Defendants are not on notice of the claims against them or the basis of such claims.

While the Court uses Count I to illustrate the deficiencies in Plaintiff's Complaint, the remaining counts rely on vague factual allegations and incorporate preceding paragraphs by reference, "causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *See Weiland*, 792 F.3d at 1321 (citations omitted); (*see* Doc. 1 ¶¶ 47–73). Even if the Complaint contained specific allegations, in order to evaluate the sufficiency of Plaintiff's claims and rule on Defendants' Motions to Dismiss, the Court would have to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted[.]" *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) (first alteration in original) (citation omitted). To do so would "give the appearance of lawyering for one side of the controversy and, in the process, cast [the Court's] impartiality in doubt." *Jackson*, 898 F.3d at 1355 n.6.

When a litigant represented by counsel "files a shotgun pleading," the "district court must sua sponte give h[er] one chance to replead before dismissing h[er] case with prejudice on non-merits shotgun pleading grounds." *Barmapov*, 986 F.3d at 1326 (citing *Vibe Micro*, 878 F.3d at 1296). Accordingly, the Court will strike Plaintiff's Complaint and grant Plaintiff leave to submit an amended complaint that remedies the issues described above if Plaintiff's Counsel can "in good faith make the representations required by" Federal Rule of Civil Procedure 11(b). *Vibe Micro*, 878 F.3d at 1295 (citation omitted); *Jackson*, 898 F.3d at 1357 (citation omitted). Plaintiff's amended complaint shall set forth separate, discrete causes of action, pleaded in separate counts, which clearly identify the set of circumstances or allegations supporting the elements of each claim against the

Defendants. *See Barmapov*, 986 F.3d at 1324 (citing Fed. R. Civ. P. 8(a)(2), 10(b)). If claims are asserted against multiple Defendants, Plaintiff must precisely identify what conduct is attributable to each individual Defendant. The amended complaint shall not make conclusory legal statements or indiscriminately incorporate by reference all preceding paragraphs into each count. Instead, Plaintiff must clearly identify which claims she seeks to assert and connect each count to specific factual allegations. Failure to submit a proper amended complaint within twenty-one days may result in the dismissal of this case with prejudice. *See Vibe Micro*, 878 F.3d at 1295 (citation omitted); *Jackson*, 898 F.3d at 1358 (citation omitted).

## CONCLUSION

Accordingly, Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice** as an impermissible shotgun pleading. Plaintiff may submit an amended complaint within **twenty-one (21) days** of this Order, as described above. The outstanding Motion to Dismiss (Doc. 13) is **DENIED as moot**.

**SO ORDERED**, this 16th day of September, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**